UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| **PRIDE OFFSHORE, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER  05-2424** |
| **WEATHERFORD, U.S., L.P.** | * | **SECTION "L" (4)** |

ORDER AND REASONS

Pending before the Court is the Defendant's Motion for Summary Judgment (Rec. Doc. 11).  For the following reasons, the Defendant's motion is DENIED.

**I.     BACKGROUND**

Chevron U.S.A., Inc. ("Chevron") hired Pride Offshore, Inc. ('Pride") to drill a well in the Gulf of Mexico through the use of Pride's mobile offshore drilling unit *Pride Nebraska*.  The work was being performed pursuant to a Master Drilling Contract executed between Chevron and Pride in February 1998 ("Pride's contract").

Additionally, Chevron hired Weatherford, U.S., L.P. ("Weatherford") to perform casing services aboard the *Pride Nebraska* as part of the same drilling operation.  This work was performed pursuant to the Worldwide Master Contract executed between Chevron and Weatherford in December 1999 ("Weatherford's contract").

On June 15, 2002, during casing operations, Patrick Gordon, a Pride floorhand, was injured aboard the *Pride Nebraska* when a Weatherford wire rope sling parted.  As a result of

1

Mr. Gordon's injuries, Pride paid Mr. Gordon maintenance and cure benefits[1] and also settled his claims for a lump sum payment of $150,000.

After paying Mr. Gordon, Pride sought reimbursement from Weatherford for the full amount it paid. Pursuant to Pride's contract, Weatherford refused to reimburse Pride contending that Pride waived its right to seek reimbursement from Weatherford.

## II.     PRESENT MOTION

In its motion for summary judgment, Weatherford asserts that Pride has waived any right to reimbursement under the indemnity provisions and the additional insured provisions of Pride's contract. First, concerning the indemnity provisions, pursuant to section 807.3 and Schedule G of Pride's contract, Pride agreed to release, defend, indemnify, and hold harmless all of Chevron's other contractors, including Weatherford, for any liability, provided that such other contractors execute "a counterpart of this Agreement or a substantially similar agreement." Pursuant to section 11.3.2 of Weatherford's contract, Weatherford argues that it did execute a substantially similar agreement and, as such, Pride is barred from seeking reimbursement.

Second, concerning the additional insured provisions, pursuant to section 901.1(e) of Pride's contract, Pride was required to obtain Protection and Indemnity insurance and to delete "all clauses purporting to limit [Chevron's] coverage to 'as owner of' the vessel." Moreover, pursuant to section 901.2, Pride was required to name Weatherford as an additional assured "with respect to the indemnity obligations assumed by [Pride] under this Contract." These

---

[1] In its motion for summary judgment, Weatherford states that Pride paid Mr. Gordon $51,000 in maintenance and cure benefits. In its opposition, Pride contends that it just recently discovered that it actually paid as much as $140,000 in maintenance and cure benefits and, as such, is now seeking that amount, not $51,000, from Weatherford.

2

provisions, according to Weatherford, create a separate and independent obligation to name Weatherford as an additional insured and, thus, provide full coverage to Weatherford for the claims resulting from Mr. Gordon's injuries.

In opposition, Pride asserts that Weatherford's indemnification agreement is prohibited and nullified by the Louisiana Oilfield Anti-Indemnity Act.[2] Since Weatherford's indemnity agreement is a nullity, Pride contends that its indemnity agreement is not the same as or substantially similar to Weatherford's and, as such, does not preclude Pride from seeking reimbursement. Furthermore, Pride argues that its additional insured obligations do not extend to Weatherford because it does not owe Weatherford any indemnity obligations.

### III.   LAW AND ANALYSIS

In this case, both parties agree upon all the relevant facts and the law that must be applied. Therefore, the only issues in need of resolution is whether Pride's indemnification agreement was the same as or substantially similar to Weatherford's,[3] whether Pride was required to name Weatherford as an additional insured, and how the Court's contractual interpretation effects Pride's ability to seek reimbursement.

At first glance, it is easy to notice that the indemnification agreements are not the same. Therefore, the Court must determine if the indemnity agreements are substantially similar.

Section 18.1.2 of Weatherford's contract provides that Weatherford's contract shall be

---

[2] La. Rev. Stat. § 9:2780.

[3] It appears as if Pride takes the position that the contracts, not just the indemnity agreements, must be substantially similar. This position is incorrect. Pursuant to the plain language and context of Schedule G of Pride's contract and section 11.3.2(ii) of Weatherford's contract, only the indemnification agreements must be substantially similar.

"governed, construed, interpreted, enforced and the relations between the Parties determined in accordance with the laws of the state in which the Chevron U.S.A. Production Company Business Unit or operating company which engages [Pride] has its principle office, without regard to its choice of law rules." On page 33 of Weatherford's contract, Chevron's New Orleans office is designated as the business unit for work in the Gulf of Mexico occurring in the United States. Since the accident at issue occurred in the Gulf of Mexico off the coast of Louisiana, Chevron's New Orleans office is the applicable business unit. Even though Weatherford's contract concerns maritime obligations and is properly cognizable as a maritime contract, the parties in such a contract can still designate Louisiana law as the applicable law. *Stoot v. Fluor Drilling Services*, 851 F.2d 1514, 1517-18 (5th Cir. 1988). Thus, Louisiana law governs Weatherford's contract.

In Louisiana, indemnity agreements contained in, collateral to, or affecting an agreement pertaining to mineral drilling are void and unenforceable.[4] Therefore, considering that Louisiana law controls Weatherford's contract, Weatherford's indemnity agreement is necessarily void and unenforceable.

Since the indemnity agreement is void and unenforceable, Pride takes the position that Pride's indemnity agreement is not substantially similar to Weatherford's. The Court agrees. Had Weatherford not executed an indemnity agreement, Pride would certainly be able to seek reimbursement from Weatherford because an indemnity agreement cannot be substantially similar to no agreement. The Court finds that a void and unenforceable indemnity agreement is the functional equivalent of no indemnity agreement. Therefore, Weatherford's indemnity

---

[4] La. Rev. Stat. § 9:2780.

agreement must be given no effect, and the Court must treat the indemnity agreement as if it was never written. As such, there is no substantial similarity between the indemnity agreements.

In addition, the Court finds that Pride was not required to name Weatherford as an additional insured. Pride is only obligated to name Weatherford as an additional insured "with respect to the indemnity obligations assumed by" Pride. Since Pride did not assume any indemnity obligations, it was not required to name Weatherford as an additional insured.

Despite Weatherford's argument, the Court finds that the language in Pride's contract is sufficiently distinguishable from the contracts in *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 550-51 (5th Cir. 2002), and *Leblanc v. Global Marine Drilling*, 193 F.3d 873, 874-75 (5th Cir. 1999), to justify the current result. In *Global Marine*, the parties entered into a Master Service Agreement with the following language: "[T]o the extent Subcontractor [Frank's] assumes liability hereunder, and agrees to indemnify Contractor [Marine], Contractor shall be named an additional insured in [certain] insurance policies." 193 F.3d at 875. Pursuant to this language, Frank's argued that the validity of the assured clause was contingent upon that of the indemnity clause. *Id*. The Fifth Circuit was not persuaded by Frank's argument finding that the parties did not intend such a result. *Id*.

In *Diamond Offshore*, the Fifth Circuit interpreted a similar contract. The parties entered into a Master Service Agreement with the following language: "The insurance requirements set forth herein are supplementary to and shall not limit or restrict as to amount, extent or otherwise the indemnity obligations undertaken by [A&B] in Paragraph (9) herein. . . . The Naming of [Diamond] as additional Insured and endorsement as respects of primary insurance shall only apply as respects liability assumed by [A&B] herein." *Diamond Offshore*, 302 F.3d at 550. Just

as Frank's did in *Global Marine*, A&B argued that the validity of the insurance provisions was contingent upon the validity of the indemnity agreement. *Id* at 550-51. Relying primarily upon *Global Marine*, the court reached the same result finding that the parties did not intend such a result. *Id*.

In *Global Marine* and *Diamond Offshore*, based upon the language of the respective Master Service Agreements, when Frank's and A&B agreed to indemnify Marine and Diamond, they also concomitantly agreed to name them as additional insureds. Essentially, the Fifth Circuit found that the enforceability of the additional insured clauses was not contingent upon the enforceability of the indemnification clauses.

Notwithstanding the holdings of *Global Marine* and *Diamond Offshore*, the Court finds that the language of Pride's indemnity agreement and additional insured provisions reflect an intent to make the enforceability of additional insured provisions contingent upon the perfection of a substantially similar indemnity agreement. In *Global Marine* and *Diamond Offshore*, Frank's and A&B agreed to indemnify Marine and Diamond and also separately agreed to name Marine and Diamond as additional insureds to the extent that Frank's and A&B assumed liability. In the present case, similar to the parties in *Global Marine* and *Diamond Offshore*, Pride agreed to name Weatherford as an additional insured to the extent that Pride assumed liability. Unlike *Global Marine* and *Diamond Offshore*, however, Pride never agreed to indemnify Weatherford. Pride's agreement to indemnify was contingent upon Weatherford's execution of a substantially similar indemnity agreement. Weatherford failed to execute such an

agreement and, as a result, no indemnity agreement was ever perfected.[5] As such, there was never a binding agreement to indemnify—enforceable or unenforceable—and nothing which could trigger Pride's insurance obligations.[6]

In *Global Marine* and *Diamond Offshore*, the parties assumed unenforceable indemnity obligations; in the present case, Pride did not assume any indemnity obligations. This key distinction distinguishes the present case from *Diamond Offshore* and *Global Marine* and leads to the current result.

## IV.   CONCLUSION

For the foregoing reasons, Weatherford's motion for summary judgment is DENIED.

New Orleans, Louisiana, this   5th   day of   July  , 2006.

*[signature: Eldon E. Fallon]*
UNITED STATES DISTRICT JUDGE

---

[5] Pursuant to paragraph 6 of Schedule G of Pride's contract, pride's indemnity agreement would only become effective upon Weatherford's execution of a substantially similar agreement.

[6] The Court realizes that the unenforceability of Weatherford's indemnity agreement is the underlying cause behind the lack of substantial similarity and, as such, this case is somewhat analogous to *Global Marine* and *Diamond Offshore*. The Court, however, finds that the language of the indemnity agreement and insurance provisions, unlike those in *Global Marine* and *Diamond Offshore*, reflect an intent to make the insurance provisions contingent upon the perfection of substantially similar indemnity agreements.